May it please the court, E.D. Cunningham of the Federal Defender's Office, I'm Jonathan Lidia Rodriguez. I'd like to reserve three minutes, if possible. Reversal. Reversal is required for all of the reasons set forth in the briefs. If it pleases the court, I'll start with the erroneous introduction of the mens rea element, reckless disregard. The Supreme Court has made clear that generic criminal recklessness requires two essential components. Okay, I agree with you that this instruction was erroneous, but I'm struggling with harmlessness. So it seems to me that the way the instruction was given in order for the jury to convict, it had to think that she understood the facts that your client understood the facts, you saw the ID, and if that's true, then I don't understand what the difference in the instructions that you're arguing about have anything to do with what the jury found or why it would make a difference. Yes, Your Honor. Under the correct definition of criminal recklessness, she has to not only know the facts or see the card, but she has to draw the inference from the facts that there's a substantial or unjustifiable risk. And under the circumstances of the case, particularly given her severe vision disability. But the vision disability, I don't know that you can go to because if the jury thought she knew the facts, that means they saw the card. I think that's when seeing the card is what sort of highlights the risk, isn't it? Well, I do want to address that, but first of all, if everybody hasn't argued harmlessness, so they've waived it and can see it. I agree that I'll ask them, but we don't have to have a whole trial again just because they've made a mistake, right? We can reach harmlessness on our own. Well, Your Honor, this is a very high burden, even if they had argued harmlessness, because seeing the card is not the same as processing the information on the card. What she had to be able to do is process subtle differences in the facial features of Mr. Martinez and the person on the card. Yeah, she looked at the card, but with her vision disabilities, and frankly, anybody who just looks at it, those two people look a lot alike, particularly given the fact that the jury found that she knew the facts that created the risk, it doesn't mean that she saw, I mean I think the jury had to have thought that she saw that this didn't look like him, and at that point it's hard to understand how she wouldn't have had the inference of he's probably not this person. And he probably doesn't have her documentation. I mean, it's hard to see how if you really saw this, which I think the jury found, then you would then not have the inference. Well, Your Honor, you have to consciously disregard, and she testified that she looked at it quickly, and you know, at a glance, I think they look a lot alike, and But how can the jury believe that and still convict under the instruction they were given? Because the instruction said, if those facts are considered in a way, in a reasonable manner. I was talking about those facts, that knowledge. Yes, Your Honor. If there's a difference between facts and knowledge, which is knowledge, close understanding of the facts. Yeah, that's the point. So the instruction that the jury convicted under didn't talk about knowledge of the facts. And I think if you have knowledge of these facts, I don't know how anyone doesn't draw the inference. I mean, it seems like at that point you need to rely on the idea that you would have knowledge that this isn't his ID, and yet not worry that he is trying to sneak into the country without valid documentation. And that inference seems so obvious that I don't know how there's not a harmless error here. Well, Your Honor, I believe knowledge just means awareness. It doesn't mean, you know, you see the card, it means that you know what's on the card. If she knew what was on the card, she knew this wasn't him. Well, Your Honor, I don't agree with that, because I think that there are substantial similarities between these people. Mr. Martinez testified that some of the agents thought it was him. So just seeing the card and knowing that, you know, here's a young man that has brown hair and, you know, the picture's kind of dark in the valid border crossing card, I do not think that that leads to an awareness of a substantial and unjustifiable risk and a conscious disregard of that risk. Because as Farber says, you not only have to know the facts, you have to draw the inference of the facts. And people are not always aware of, they don't always know things that reasonable people know. I mean, how did you hear from Mr. Fung that he knew? Because people don't always know. Well, no. What they were instructed was that they could convict if she merely failed to consider and weigh the facts that she knew in a reasonable manner. But first they had to find that she knew the facts that created the risk. And I don't know how to interpret that other than that they thought she knew that this ID didn't match this person. Well, Your Honor, I disagree with that. I think what that means is that she knew what was on the card. She knew the two pictures on the card. But another problem is that... If she said that did not create the risk, then you're taking away part of the instruction. She had to know the facts that created the risk. And seeing the card, it sounds like you're only giving her part of the knowledge. It seems like the facts that created the risk are that the card doesn't match this guy. Well, Your Honor, I don't think that their instruction clearly conveys that. I mean, Farber also says that recklessness is a very tricky concept for jurors. Because it is so easily confused with negligence. And actually in civil context, in court context, it's a different definition. And so really, the correct instruction, the instruction requested by counsel, aware of and consciously disregards a substantial and unjustifiable risk is what was needed here. And another problem with the court's instruction is that it was an objective standard, not a subjective standard. So the jury could have easily just, you know, said, well, I would know that. A reasonable person would know that without even considering or envisioning disabilities. And another reason that Scott Farber, Your Honor, is that the jury, excuse me, the government repeatedly in closing argument said that wasn't reasonable of her. I mean, what would a reasonable person have done? So the government was inviting the jury to use a reasonable as standard. I happen to agree that you have a very good argument about this instruction. I just don't see how your argument about why the instruction is erroneous maps onto anything that matches with what the jury could have found. But I don't want to take all your time. I know you have other issues. But, you know, reasons that's not harmless, they look a lot like Mr. Martinez. In fact, testified he didn't think she knew. There were a defense alien smuggling expert who said that this really wasn't consistent with alien smuggling. There were reasons to doubt the officers. And really, the jury's emphasis in closing argument for all of those reasons. And another reason, too, is that what the court has to consider is whether a jury rationally could have reached a contrary finding. And that is a very, very high standard. And here we know that this jury was grappling with this issue with the wrong instruction. If they had the right instruction, they would have been grappling with it even more, I contend. Are there any further questions on that issue? I'll move to the second issue. Confrontation. The government did not meet its burden to demonstrate unavailability of Mr. Martinez. They did not even attempt to contact him on the address that they had for him on his card. Could a juror say that they have done that? That they knew he had a lawyer? Well, it was their burden. It wasn't his lawyer's burden to contact him. If they dragged you ethically, contact someone who has a lawyer? Well, assuming that you need to contact the lawyer, the lawyer made clear well before the trial issue in this case that he didn't have the address. He said, I believe that's on here on page 195, I don't have the address. I never get an address. At that point, the government definitely had the burden to give him the address and allow him to try to contact. Didn't do that. They have to be both diligent and competent, and they weren't here. And if they kind of ask the defense lawyer for permission to make the contact or anything? Oh, yeah, sure. Just because he's represented doesn't mean the lawyer can't say what by all means, with limited purpose, seeking his appearance at the trial. You can contact him. Yes, if he agrees to come, if you reach him, then he can be represented by the attorney. Your Honor, I have to admit, it's not something I looked closely at. Oh, Your Honor, possibly so. Possibly so. If you seriously came to me and said, can I contact your client, and I don't mean this client, just your hypothetical client, would you be authorized to say, yes, go ahead, I'll do it? I'm not sure you would. Well, actually, actually, I think the representation was over at that point unless he came back to appear at trial. That's a different question. That's a different question altogether. So that's a different answer. And maybe that's a good answer to Judge Field's question. The representation is over, and so there was no reason to go on. I don't know. Well, Your Honor, I think the whole thing is beside the point because the government easily could have given the address to the attorney once they found out that the attorney did not have an address. The district court, I think, found that reasonable efforts were made. Is that something we review for clear error or de novo? What is our standard of review? What kind of question is this? It's a constitutional question. It's a confrontation question, and it's reviewed de novo. And I would say that – I mean, is that a fact finding, though, that's part of the confrontation question? Well, under this court's precedent, it's per se unreasonable not to attune to contact, and that was never – you know, the district court never considered that fact that they had an address. The district court seems to have thought they did. I mean, you just said per se unreasonable not to attempt to contact, but I think the district court thought they did attempt to contact. They contacted the lawyer. And, I mean, we may disagree with the district court about whether reasonable efforts were made here, but I'm trying to figure out how we say that, what we have to say about what the district court thought. Well, it's per se unreasonable not to try to contact when you have an address. Well, not if he's represented, I don't know they always make a blanket statement like that. That seems not to be true as a blanket statement, so it has to be more nuanced, right? Well, the district court did not consider the fact that they had an address on the card and that they didn't give it to the defense attorney or try to contact. That's something that just wasn't discussed. It wasn't the defendant's burden to bring that up. It was the government's burden to demonstrate unavailability. So what did the government actually do? All the government did is they sent a letter to the material witness care of the attorney at an address in Tucson and said, we'll pay for your expenses and we'll parole you. And that's all they did. They didn't ask the attorney if he had an address for him. They didn't do anything else. And then I think they checked to see whether Mr. Martinez had been in the country. Again, but that's all they did. Are there any further questions on that? I know I have my entourage out of time. So he was cross-examined in a deposition earlier, right? Yes, he was. And was the cross-examination whose challenge to the jury? It was. So did you have any indication of what further would have been asked or how it would have been different if he actually had attended the trial? Your Honor, that is not part of the harmlessness analysis, and you just have to consider the testimony that was admitted in trial through the video deposition because if the government doesn't mean its burden to demonstrate unavailability, that shouldn't have come in. But the Supreme Court has made clear that live testimony is far preferable, even when you have a video deposition. Especially in this video deposition, you can't see who the witness is looking at, whether he's making eye contact with a defendant. You know, this trial happened over a year after the video deposition, and there was a lot of investigation and expert work that was done, but he couldn't be cross-examined on. So it was definitely harmful error, and I'll reserve the rest of my time. Thank you. Well, again, I'm so honored to speak before you today in the United States Supreme Court of Saskatchewan. The court's jury instruction or the records of disregard was inadequate in this case. The court's instruction was consistent with instructions by the 10th and 11th Circuit on a specific issue regarding what reckless disregard means. Well, it's after the 10th Circuit's decision. It was decided two years before the Supreme Court's decision, the former. Yes, but it still makes any difference. I'm not convinced that recklessness in general is the same as reckless disregard, actually. I think the fact that you have the disregard in there is something that I think makes it a different animal than just the recklessness. But in any event, the instruction was, okay, if this finding consists with any 9th Circuit case regarding reckless disregard, then, in fact, was similar to the Covett jury and the 9th Circuit model jury instructions. So to be considering all those... Our model jury instructions could be outdated, though, right? That is correct. The court has found that they're not binding statements at the moment. But... And also, the government's position is, and on this issue, we're going to play error review because the defendant did not make the argument to the trial court that he's making here, the specific argument he's making here. So especially... Can you explain how you think the instruction is consistent with Rodriguez and Farmer? Because if the white court changed it, it requires knowledge of facts. And then it says, which, if considered in a reasonable... Considered in a way in a reasonable manner, indicated substantial and unjustifiable risk that the alien was here. Of which he is aware, though, right? I think you're skipping irrelevant words. I think the knowledge of facts, I mean, I mean, what's the difference with negligence then? Negligence is basically you should have known or you should have been handling the risk. You should have known, right? I thought the difference was, in recklessness, you have to be aware of the risk and yet disregard it. And you're skipping the words, in our cases, of which he is aware, when you quote. So, I mean, we say, the risk of which he is aware. So I'm not sure how this jury instruction is consistent with that. Again, like I said, I'm not sure. One of the problems when you look at this in trying to incorporate cases discussing reckless as opposed to reckless disregard, the cases, the jury cases discussing recklessness talk about it being a cludge's disregard. I don't see how a cludge is disregard. You can square that with reckless disregard, which is what the statute uses in this case. Why not? Because I think that different kinds of... Recklessly disregarding something is different from consciously disregarding something. I would say, I don't see you recklessly, consciously disregarding something. You're consciously, recklessly disregarding something. I'm not sure what kind of risk is used in the term reckless disregard. It is incorporating the generic reckless meant for you. It doesn't let reckless include conscious. It just qualifies to say, you consciously disregard it. You didn't do this, so you are reckless. Let's say you're standing on the train tracks, right? You see the train coming in front of you, coming in your direction, and you decide to stand there, not move away. You see what you're consciously doing, you're not blind, you're not deaf. You're perceiving it. You can say, well, you're consciously disregarding the risk that you're going to be hit. It's a pretty good risk if you keep standing there because you think you're going to be hit. Or you could say, you're recklessly disregarding it. So, what you mean in those circumstances is you're conscious of the risk, and you are reckless in disregarding it. Recklessness actually includes consciousness as a component. You can't unconsciously be reckless. You can only be reckless as to things of which you are conscious. Whereas, if you're negligent, you might as well be paying attention. I realize, for example, that today there's not a good one, but there could be some other risk. Although, you should still be conscious and you're not, and you see what you're negligent. But it's not aware of the risk, and you disregard it, and you're reckless. In this context, the court requiring, these words are given by the court, requiring the defendant to know of the facts that they've created, but also requires that those facts be assessed in a reasonable manner. And I think the problem is that they need to act in a reasonable manner so no facts are negligent. Whereas, in order to be reckless, you have to sort of be aware of the risk and subconsciously make a decision to prove this valid. And if the court has had interpretation of the statute, I think it's basically an underplayed error standard. It's not underplayed error, though, if you objected, or whoever in the council was objected to this instruction. He objected, but he did not make the objection that is being made in this court, and that is what is required. Let's say we disagree with you about that, too. Why didn't you talk about harmlessness? Because we're in a little bit of a tough spot now. We didn't talk about the harmlessness. We just reviewed it as a plain error case where the defendant would have the right to demonstrate that they was prejudiced. Let's say we read her objections as adequate to preserve this issue and not a plain error standard. What should we do about the fact that you didn't argue about harmlessness here? Well, yeah, as you noted, you can self-consider even if you didn't argue it. And, again, that's usually a trial error. It should, because in fairness to the district judge, what the district judge did in this case was realize there was no control involved in the circuit. Looked at the court's moral interests, which I agree, I'm not arguing, but they also cited two other circuits that gave basically the same definition in this specific context. I don't see how you can, with those set of facts, you can say the judge abused its discretion in giving that instruction. Well, if it's legally wrong, then we have to unless it's harmless. So do you have an argument that it's harmless? Yes, I think if you look at the facts of this case and the fact that the instruction required the jury to find knowledge of the facts, that that means the jury had to have determined that the defendant knew that it wasn't his ID, which means that she was acting in a reckless district argument. I'm a little bit confused. Are you saying the instruction that was given complies with Farmer, or are you saying that Farmer doesn't apply to the instruction in this case? I am going back to the argument, which apparently is not making much headway in the reckless district argument. It's different than typical reckless district. I mean, I think you've got to look at it in the context of what happens in your jurisdiction. But the United States Circuit is applying Farmer a prior reckless district case. If you're in the opposite medium, graduating is not a very common thing. Now, I'm thinking of the domestic use of a prior case, so I think that's a loose inter-argument. Are you familiar with that reckless case? No, I don't have to talk about it in here, no. I suspect if you were, you wouldn't be making your argument about it. But in any event, the facts of this case were such that the instruction that was given by the court did not prejudice the defendant under the specific facts of this case, which were in addition to the conclusion that she must have known that the ID was not his, you've got the fact that she picks up somebody who she doesn't know, she's never met before. The interactions that occurred at the checkpoint, where she was trying to essentially shield the Indian from the questioning by the Border Patrol agents, you add that all together, there was very compelling evidence of guilt in this case. So in that regard, any error in the instruction was harmless. So on the issue of the unavailable witness, the issue in this case is whether what the government did was reasonable, not whether it was perfect, not whether the government had done wrong, whether it's reasonable. And trying to contact a witness through their attorney is reasonable. But there's no reason to say, look, I don't have any way of contacting the attorney general. Obviously, it requires the attorney still to consult with the government, so there's a difference in those claims in this particular situation. I'm not sure the government had any adequate interest in the defendant, as I know. I'm sorry. I would say the evidence is not sure that the government had any adequate interest in the defendant. The only interest or the current, that was introduced at trial was, and I'm going to mispronounce this, I know, so excuse me, Melcher Ocampo, a CEO, they're recruits, essentially, and his deposition, the alien testified, that he lives on a bridge, quote, all by himself, close quote, about an hour away from Melcher Ocampo. So I'm not sure how to read that address that we have. It's actually, he lives an hour away from the... Isn't there some address on an ID? Is that the same address you're talking about? That's the address on the ID. But no one tried to find him at that address, right? Well, and again, all the factual reasonableness isn't reasonable to rely on contacting the attorney. Actually, how much reason does it is? I think the closest case is the, is the Medusa Zarya case, and then there's the Publish case. Can you tell us about the Publish case? What's the magnitude? Say that again, please. The Medusa Zarya case. There's two, one, two, I'm sorry. Can I say it for that? Yeah. It's 655 and 3rd, 1092. Is that one of our cases? Yes. And basically in that case, because the defendant didn't object, there was no record made... But you're the defendant, too. No, in my case, there was no record made because the defendant didn't object, so on appeal there was no plain error review. And the court concluded that there wasn't plain error because basically the government could have established that it had attempted to contact the defendant through the attorney by submitting a letter, like we said here, basically the same procedure that was used here. They said because of that, there was no plain error. So that's the argument. Those steps are taken. It's reasonable. And that's what we said here. What standard of review do you think we use in this question? Generally, it's confrontation clauses. Do you know? Well, when I think of actual determinations, you have to look at the clear order. It is clear. So it's incompetence. About diligence and competence, and superficial pressures. What the standard is reasonable, is that the reason is that any clergyman's liberalness turns to whether or not the government was diligent and competent in trying to procure the witnesses. I don't know if that's an accent. It's been for a few hundred years. I'm just asking you. You said this is factual. I'm just wondering whether those are any factors. I mean, whether it's diligence. It's not like speeding where you can hold a, you know, whether somebody's diligent or competent. Those are not judgments. They are judgments, but they're also factual judgments based on the factual scenario that the government is confronting. I mean, we've got to remember that this witness is in a foreign country when the government does not have speeding power. So what's reasonable in that context may be different from a defendant that's, like, in another state or something. You've got to look at the factual context to determine what reasonable this is. And in this case, he was represented by an attorney. It was reasonable for the government to attempt to contact him through his attorney. Okay. Let's go ahead and take a couple of questions on the recklessness issues. Thank you. We've got time. Any of you who doesn't have a little time, let us know about it. A couple of points. As Your Honor pointed out, for the recklessness issue, the issue is whether there was knowledge of the rest, not knowledge of facts. And I do contend that the knowledge here was looking at the card and seeing what the card displayed, not recognizing that there were specific differences with the facial features. And this is, first of all, the government's way of parmosis, conceded it, and under the high standard, that would have to mean they can't, because a rational jury could have reached a contrary conclusion. We, you know, it's the facts here where we had a juror who wasn't going to convict, and the jury was grappling with these issues, even with incorrect instruction, shows that. Counsel, have you compared, you know, in Farmer, they say to the model penal code, which has four subsections. Yes, Your Honor. And have you compared the instruction actually given by the district court judge here with the definition of recklessness regarding model penal code? Yes, Your Honor, and I have it here. And actually, the requested written instruction was based on the model penal code. Oh, I'm sorry. Consciously disregards substantial unjustifiable risk. I'm talking about the relationship between the actual instruction given and the model penal code. Yes, Your Honor. Actually, the instruction given is the negligence instruction, which is, you should be aware of substantial and unjustifiable risk and fail to perceive it. So the instruction given was much closer to the negligence model penal code instruction than to the recklessness. And with regard to the confrontation issue, this was an address. It had the indication S slash N, which means there's no number. It is out in the village. And the Mexico post office confirms that that's how people can receive their mail at the post office, which they don't have an address. Pina Gutierrez, the witness has been deported. So the fact that the witness has been deported does not absolve the government of the obligation to try to contact them at the address. It should have been given to the McWood attorney and that's the preferred way. And this is to no overview because it requires evaluating the totality of the circumstances to determine whether it's reasonable. So your pleasant counsel has pointed us to Mata Saez, which I'm looking at. And am I right that it actually found that relying on just contacting the lawyer and offering to pay was plain error? Yes. Well, no. They found that the government didn't demonstrate that to the court. But in Mata Saez, which is addressed in my reply brief, there was no indication that there was an address for the individual and that the government didn't give the address to the material witness's attorney. So it's a very different situation. And I would also underscore that the district court did not was not aware that the government had the address. And if there are no further questions. Thank you. Thank you, Denise. I hope this has been helpful. Thank you, Amy. I'm Keith Mason.
judges: Kozinski, Friedland, Bennett